UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 95-CR-00605-SEITZ

UNITED STATES OF AMERICA,

v.

ANDRE SCALES,

    Defendant.
_____/

## ORDER GRANTING MOTION TO REDUCE SENTENCE PURSUANT TO THE FIRST STEP ACT

This CAUSE is before the Court on Defendant Andre Scales' pro se Motion for a Reduction of Sentence Pursuant to the First Step Act of 2018 [DE 1258, 1264]. The Government responded and the Defendant, through counsel, replied.[1] Having considered the Parties' submissions [DE 1258, 1262, 1264, 1270, 1287], the legal authorities, the Presentence Investigation Report, oral argument [DE 1312] and the psychological evaluation of Dr. DiTomasso Ph.D., [DE 1307-1 sealed], the Court will grant the motion to reduce sentence.

I.     **Background**

On May 7, 1996, a jury convicted Mr. Scales of three counts: Count 1-conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846; and, two substantive Counts 12 and 14-possession with intent to distribute a "mixture and substance containing a detectable amount of cocaine," in violation of

---

[1] After appearance of Counsel, Defendant filed a pro se sur-reply [DE 1267]. The Court has not considered that filing.

21 U.S.C. 841(a)(1) [DE 362]. The indictment did not specify the quantity of crack involved or the penalty provision applicable to 21 U.S.C. § 841 [DE 185]. The PSI, however, calculated the drug weight to be "in excess of 1.5 kilograms of cocaine base." (PSI ¶ 34).

Using this drug weight, the PSI calculated Mr. Scales's base offense level as 38. (PSI ¶ 34); see U.S.S.G. § 2D1.1(c)(1). That level increased two levels, to 40, because Scales possessed a firearm during the offense. (PSI ¶ 35); see U.S.S.G. § 2D1.1(b)(1). Scales was also found to be a career offender under U.S.S.G. § 4B1.1, which carries a level of 37, but his higher total offense level of 40 controlled. (PSI ¶ 40). Lastly, because of his career-offender status, Scales's criminal history category was set at VI. (PSI ¶ 65). The resulting sentencing guideline range was 360 to life, (PSI ¶ 101), but due to 5G1.1(c)(2), the applicable guideline sentence was life imprisonment. Furthermore, all three counts carried a statutory mandatory minimum term of life imprisonment. (PSI ¶ 100). Also, prior to trial, the Government filed a Notice of Intent to Seek Enhanced Penalties pursuant to 21 U.S.C. § 851 based on Scales's prior conviction for possession of cocaine and two convictions for the sale of marijuana [DE 289].

Scales has served more than 290 months in prison. During his incarceration, he has appealed and collaterally attacked his conviction consistently but

unsuccessfully.[2]

## II. Standard

Once a court imposes sentence of imprisonment, it is considered a final judgment on the matter that generally may not be modified. 18 U.S.C. §§ 3582(b) & 3582(c)(1)(B). However, a court can modify a sentence where it is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Several Courts have held that 18 U.S.C. 3582(c)(1)(B) is the proper mechanism for a First Step Act Motion. *See United States v. Wirsing*, 943 F. 3d 175 (4th Cir. 2019).[3]

The First Step Act ("FSA") made retroactive the 2010 Fair Sentencing Act,

---

[2] The Government has not raised Mr. Scales' prior appeals or collateral attacks as a bar to the instant Motion for Reduction of Sentence pursuant to 404 of the First Step Act.

[3] In *Wirsing*, the reviewing Court distinguished the Fair Sentencing Act from the First Step Act, with the latter permitting modification of the term of imprisonment, and the former only modifying drug quantity calculations without reference to sentencings. *Id.* at *184. The Court concluded that the First Step Act falls within the narrow section to finality provided by § 3582(c)(1)(B), which permits a court to modify a term of imprisonment. *Id.*

This Court is aware that in the unpublished panel opinion of *United States v. Carter*, No. 19-10918, 2019 WL 5295132, *3 (11th Cir. Oct. 18, 2019), the reviewing Court rejected a movant's contention that under the FSA a defendant is entitled to a de novo sentencing proceeding under current law. *Carter* is inapplicable because there the jury determined beyond a reasonable doubt that, as charged in the indictment, the defendant conspired to possess with intent to distribute 50 grams or more of crack cocaine and that a death resulted from the use of a controlled substance that was part of that conspiracy.

In *United States v. Means*, No. 19-10333, 2019 WL 4302941 (11th Cir. Sept. 11, 2019) (unpublished), the reviewing Court affirmed a lower court's denial of an FSA challenge to a mandatory minimum crack cocaine sentence. *Means* is also inapplicable because the defendant only challenged his sentence pursuant to § 3582 (c)(2), rather than § 3583(c)(1)(B).

which reduced the hundred-to-one disparity in the treatment of crack and powder cocaine. *Dell v. United States*, 710 F.3d 1267, 1271 (11th Cir. 2013). Where a defendant is serving a sentence for an FSA "covered offense," the court is permitted, but not required to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010... were in effect at the time the covered offense was committed." PL 115-391, December 21, 2018, 132 Stat 5194. A "covered offense" is defined as a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . ., that was committed before August 3, 2010." *Id.* Pertinent here, the Fair Sentencing Act increased the threshold amount of cocaine base needed to trigger the mandatory minimum sentences in 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii) from 50 grams to 280 grams for a 10-years-to-life sentence, and from 5 grams to 28 grams for a 5-years-to-forty-years sentence, respectively.

### III. Discussion

#### A. The Parties' Positons

The essence of Mr. Scales's argument is that Section 404 of the FSA applies to his offenses of conviction, as he has not sought prior relief under the FSA, and the Court has broad authority under the FSA and 18 U.S.C. § 3582(c)(1)(B) to impose a reduced sentence for crack cocaine offenses committed prior to 2010 to the extent otherwise expressly permitted by statute. Scales emphasizes that, unlike the limitations set forth in 18 U.S.C. § 3582(c)(2), under 3582(c)(1)(B), he is entitled to a plenary resentencing. Scales argues that in determining the drug quantity for

4

purposes of assessing the statutory penalty, the Court is required to look only at what was charged under the indictment and proved to the jury, and not what the PSI stated. Thus, Scales argues that he is not subject to a mandatory life sentence because the Indictment in this case did not charge, and the jury did not find that the offense involved 280 grams or more of crack cocaine. [DE 1264 at 8].

Mr. Scales asserts that if his sentence were imposed today, his offense level as a career offender would be 34, U.S.S.G. § 4B1.1(b)(2), and with his criminal history of category VI, his advisory Guidelines' range would be between 235-293 months.[4] Mr. Scales has been in federal custody since October 11, 1995 and has served approximately 290 months' imprisonment. Defendant thus contends that because he has already served nearly twenty-five years for offenses that would, under today's law will yield a much lower sentence, the Court should impose a sentence of time served and order his immediate release.

The United States opposes the motion arguing that the PSI and the Court, relying on the PSI, determined that the actual weight of the narcotics involved in Mr. Scales' offenses of conviction was in excess of 1.5 kilograms of cocaine base, and that he met the criteria for a career offender pursuant to USSG 4B1.1. The United States maintains that his statutory mandatory minimum sentence of life and the statutory minimum term of 10 years supervised release was correct.

---

[4] Defendant's Motion misstates the guideline range for a level 34 offense and a criminal history VI. A level 34 offense with a criminal history of VI is 262-327 months.

5

The Government further contends that had Section 2 of the Fair Sentencing Act been in effect at the time of Mr. Scales's sentencing, it would have had no impact on his sentence because Scales received the statutory mandatory minimum term of life, and there would have been no change to his guideline range, his sentencing range or his career offender base offense level [DE 1262 at 5].

**B. Basis for Court's Determination**

The Court concludes that the First Step Act applies to this case. First, the law authorizes a court to modify a sentence where it is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). The Defendant seeks relief under the First Step Act, a statute, rather than section 18 U.S.C. § 3582(c)(2), which applies to changes to the sentencing range by the Sentencing Commission. By its express language, the Court's authority to resentence a defendant is broader under section (c)(1)(B), and is not limited by the Sentencing Guidelines.

Second, although not addressed in the Government's written or oral response to the Defendant's Motion, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), are applicable.[5] Before *Apprendi* and *Alleyne*, the Eleventh Circuit held that the weight or quantity of a controlled substance is not an element of an offense, so the indictment need not allege the weight or quantity. *United States v. Perez*, 960 F.2d 1569, 1574 (11th Cir. 1992). *Apprendi* and *Alleyne* changed that judge-made rule by requiring any fact which increases the

---

[5] At oral argument, the United States rested on its papers and thus never addressed whether *Apprendi* and *Alleyne* applied to this case.

6

statutory maximum penalty (*Apprendi*) or minimum penalty (*Alleyne*) for a crime to be proved to a jury beyond a reasonable doubt. *United States v. McKinley*, 732 F.3d 1291, 1296 (11th Cir. 2013). The Eleventh Circuit has not addressed whether *Apprendi* and *Alleyne* apply in a First Step Act case, and Courts within and outside this district have split on the question.[6] Recently, the undersigned considered *Apprendi* and *Alleyne* in granting a First Step Act reduction to one of Mr. Scales's co-defendants, *United States v. Harris*, No. 95-CR-00605-Seitz, (S.D. Fla. Sept. 25, 2019) (DE 1303), and concluded that the drug quantity charged in the indictment and found by the jury beyond a reasonable doubt controlled, rather than the drug quantities set forth in the PSI. The Court adopts the same analysis and conclusion here.[7]

Thus, what governs is the amount charged in the indictment and proved to the jury. Here, the Indictment charged Scales simply with the intent to distribute, a "detectable," but unspecified, amount of cocaine base [DE 185]. When a drug weight is unspecified, § 841(b)(1)(C) applies, which sets a statutory maximum for those

---

[6] Neither *Apprendi* nor *Alleyne* apply retroactively on collateral review. *Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283, 1285 (11th Cir. 2014).

[7] As discussed in *Harris*, this Court finds the indictment-controls theory to be the better reasoned approach. To decide otherwise would require that the Court engage in speculation which would be fraught with uncertain consequences. Indeed, here, the government did not indicate *any* drug quantity, only a "detectable" amount, and did not specify the penalty provision. The Court cannot speculate as to what the government would have done under a different legal landscape. Moreover, there is no telling what effect a different indictment might have had on the jury or the defendant—he may have chosen to take a plea instead of going to trial.

7

with a prior drug felony conviction, at 30 years (360 months) in prison. Under § 841(b)(1)(C), Defendant's conviction is not subject to a mandatory minimum sentence, and a career offender's sentence is limited to a statutory maximum of 30 years and is assessed at a level 32. U.S.S.G. § 4B1.1(b)(2).[8] The two-point gun enhancement brings Mr. Scales's total offense level to 34, and with the criminal history category of VI, results in a sentencing range of 262 to 327 months. U.S.S.G. Ch. 5, Pt. A. Mr. Scales also remains subject to the 851 enhancement which provides for a statutory penalty between 0-30 years.[9]

Mr. Scales has already served over 290 months in prison, which falls within the mid-range of the guidelines. Given the significant changes in drug sentences under the Fairness in Sentencing Act, this case falls squarely into those type of cases that the First Step Act sought to remedy.

### C. Court's Discretion to Apply First Step Act

The First Step Act is discretionary. In considering whether to exercise its discretion, the Court considers the 18 U.S.C. § 3553 factors, Scales' disciplinary record while in custody, information contained in his PSI, which has been updated

---

[8] It is noteworthy that two ten dollar sales of marijuana and simple possession of cocaine which made Mr. Scales a career offender, would not qualify as an § 851 enhancement today. Further, there is no longer a mandatory life sentence under § 851.

[9] If the Court ignores *Apprendi* and *Alleyne* in these proceedings, then the First Step Act would not help Scales. That is because if the Court re-adopts the uncharged quantity of drugs alleged in the PSI, then the 280-gram threshold under § 841(b)(1)(A)(iii) is met, and the amended guidelines would yield no change.

8

via the Psychological Evaluation by Dr. Michael J. DiTomasso, Ph.D., filed under seal, and re-entry plan. For the reasons discussed below, the Court will exercise its discretion and grant Scales' request to have sentence reduced to time served.

(i) *Disciplinary matters and PSI mental health risks*

During his incarceration, Mr. Scales had 20 disciplinary reports (DRs) in 24 years. Eleven of these were for the following conduct: three were for being insolent, four were for not carrying out work and assignments, one each for not obeying an order, interfering with the count, being in an unauthorized area and possession of an unauthorized item. The rest were for sexual infractions. Two were for sexually suggestive communications, one was for sexual interaction with another inmate and six were for masturbation.

Given these infractions, the Court found Dr. DiTomasso's evaluation instructive in assessing Mr. Scales's risk of re-offending if returned to society. Dr. DiTomasso concluded that Mr. Scales's DR record does not suggest dangerous behavioral dyscontrol and appears to be within expectations of the situation and the length of time involved.

As to antisocial tendencies, mental health and substance abuse, Dr. DiTomasso's noted that Mr. Scales presented very positive attitudes toward rehabilitation and is highly motivated to not engage in recidivist behavior. Also, although Mr. Scales reported mental health issues in the past, Dr. DiTomasso noted that he spent twenty-four years in prison without any psychotic symptoms and without taking antipsychotic medication. Further, Dr. DiTomasso concluded that

Mr. Scales "does not have a psychopathic personality and the dangerous and recidivism risk that goes with that personality type can safely be ruled out." The report notes that although Mr. Scales used to be a drug addict, he has been clean and sober, and Dr. DiTomasso recommends that he refrain from drugs and alcohol. Dr. DiTomasso concluded that Mr. Scales, who has a 9th grade education and worked in construction in the past, learned something from the classes he took in prison.

In sum, Dr. DiTomasso assesses Mr. Scales's risk to the community upon being released from prison as low. It is noteworthy that although the Defendant was assessed to be a career offender, he was never convicted of a crime of violence and was never involved in a violent incident during his twenty-four year incarceration. Furthermore, Mr. Scales is now in his late 40's and has expressed a desire for a different kind of social life than in his life before prison. Mr. Scales now works out, reads books and writes.

(ii) *Re-entry Plan*

The Court has also considered Defendant's Re-entry plan, including his family support. Defense Counsel explained that upon release, Mr. Scales has a job that will pay $12.50/hr to lay pavers. Defendant indicated that he is willing to participate in a Moral Reconation Therapy (MRT) program. Defendant is willing to participate in CARE Court.

Although Mr. Scales's adoptive parents are deceased and over the years he has lost touch with his two sisters, Defense Counsel has been in contact with

Defendant's younger sister, who works at the Court of Appeals, and believes that there will be a reconciliation between Defendant and his sister. The issue, however, is immediate housing. Defendant has agreed to placement in a Residential Reentry Center (RRC) so he has a place to live while he saves money and can find alternative housing; otherwise, he would be homeless.

It appears that Mr. Scales is motivated to not return to prison, has a marketable skill and a possible job upon his release. The Court therefore believes that immediate release, for time served, is appropriate. To avoid his potential homelessness, the Court will, at the Parties' joint recommendation, modify the terms of supervised release in the Judgment and Conviction to provide direct, immediate placement at an RRC for the first six months of his release.

## IV. Supervised Release Term

With those observations in mind, even though Scales has not discussed the term of his supervised release, which is now five years, the Court notes that it has no current intention of reducing that term.

Supervised release plays a vital role in the success of citizens reentering society. It has been nearly 25 years that Mr. Scales has lived in a highly structured society, in which he has had no responsibility to pay for his meals, clothes, rent, electricity, water, phone. Moreover, he has not shown that he has developed the modern skills needed in a world that has been utterly transformed by technology. Nor does he have any money or credit to give him the financial foundation needed to survive legally and successfully.

To address his potential homelessness, the Court will impose a special condition of supervised release that Mr. Scales be directly and immediately placed at an RRC for up to the first six months of his supervised release, unless the United States Probation Office approves of other housing that he obtains prior to the expiration of that six months. Because his potential employment is in Palm Beach County, he should be directly transferred to the RRC in West Palm Beach. If a bed is not immediately available in West Palm Beach, he shall be placed at an RRC in Miami, Florida until a bed is available in the West Palm Beach RRC. Because he will be living in West Palm Beach, he would not be eligible to participate in CARE Court as it is presently only operating in Miami. He is strongly encouraged to volunteer to participate in a reentry support program similar to CARE Court in Palm Beach County. On the other hand, if he resides in Miami, he is strongly encouraged to volunteer to participate in CARE Court. It is the Court's hope that working with U.S. Probation, Mr. Scales will develop a concrete plan to become an exemplary returning citizen.

Therefore, it is ORDERED THAT

1. The Motion to Reduce Sentence under the First Step Act [DE 1258] is GRANTED.

2. Defendant Scales's term of imprisonment is reduced to TIME SERVED with direct transfer to an RRC per the special conditions of supervised release.

3. Mr. Scales shall be subject to a supervised release term of five years.

4. As special conditions of supervised release:

a. Mr. Scales shall serve the first six months of his supervised release at an RRC in either West Palm Beach or Miami as determined by available bed space, or until he finds a residence approved by the United States Probation Office.

b. Mr. Scales shall refrain from the use of alcohol or narcotics.

c. Mr. Scales shall participate in MRT.

d. Mr. Scales is strongly encouraged to volunteer to participate in a reentry support program similar to CARE Court in Palm Beach County.

5. The Clerk of Court shall forward a copy of this order to Scales, his counsel, the United States Attorney's Office, United States Probation and the United States Bureau of Prison.

6. The Court will enter an Amended Judgment in a criminal case consistent with this Order.

DONE AND ORDERED in Miami, Florida, this 3rd day of January, 2020.

*Patricia A. Seitz*
PATRICIA A. SEITZ
UNITED STATES SENIOR DISTRICT JUDGE

cc: All counsel of record